UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH JORDAN,

    Petitioner,

v.

                                                           Case Number 17-10729

CATHERINE BAUMAN,                       Honorable Thomas L. Ludington

    Respondent.
_____/

**OPINION AND ORDER DENYING THE AMENDED PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Joseph Jordan, a state prisoner at the Alger Correctional Facility in Munising, Michigan, has filed an amended *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 8. The pleading challenges Jordan's Wayne County, Michigan conviction and sentence of thirteen to thirty years for armed robbery. Mich. Comp. Laws §750.529. Jordan alleges as grounds for relief that (1) the prosecution failed to introduce credible and sufficient evidence to prove his guilt beyond a reasonable doubt, (2) offense variable four of the Michigan sentencing guidelines was incorrectly scored and he was sentenced on inaccurate information, and (3) his constitutional rights were violated by fact-finding that increased the floor of the permissible sentence. Respondent argues that Jordan's first claim lacks merit, his second claim is not cognizable on habeas review and lacks merit, and his third claim is moot and lacks merit.

For the following reasons, Jordan is not entitled to habeas corpus relief. The amended petition will be denied and the case closed.

**I.**

The charge against Jordan arose from an incident that occurred in Detroit on September 8, 2013. The state court established the following:

> Jacqueline Holt, the complaining witness, stopped at a Citgo Gas Station at the intersection of Woodward and Euclid to replenish her car's gas tank. Holt walked into the gas station's store and prepaid for her fuel. Two other customers, Earl Hays and his wife (whose name does not appear in the record) followed Holt inside. As Holt returned to her vehicle, a man with "something in his hand" approached her, entered her "personal space," and "snatched" her necklace. Holt believed that the object was a gun. She screamed a curse at the thief, which attracted Hays's attention. As Holt's assailant ran behind the gas station, Hays followed. Holt then called the police.
>
> The robber quickly eluded Hays, but Hays persisted with the chase. Hays finally located his quarry at a car wash located behind the gas station. The offender had apparently parked his car there while he committed his crime, leaving behind an unattended baby in a car seat. Hays confronted the man, who raised his shirt and displayed a .38 caliber handgun. Hays walked away.
>
> Three days later, the police arrested defendant at the same gas station, and the prosecutor charged him with armed robbery, MCL 750.529. Hays and Holt each identified defendant during separate photographic lineups. Both also identified him at defendant's trial.
>
> Holt recounted for the jury that defendant "had some kind of weapon in his hand" when he stole her necklace. She further testified that defendant had telephoned her from jail the night before the trial, apologizing and asking for forgiveness. Rather than comforting her, the call worried Holt, as she did not know how defendant had obtained her telephone number. Holt contacted the assistant prosecuting attorney assigned to the case to report her concerns.

*Id*.

Jordan did not testify or present any witnesses. His defense was that the crime was at most a larceny from a person and not an armed robber because the larceny was completed before Hays observed the gun. The trial court instructed the jury on armed robbery and on the lesser included offenses of unarmed robbery and larceny from a person. On January 23, 2014, the jury found

Jordan guilty as charged of armed robbery. On February 6, 2014, the trial court sentenced Jordan to prison for thirteen to thirty years.

In an appeal to the Michigan Court of Appeals, Jordan challenged the sufficiency of the evidence at trial, the scoring of offense variable four of the Michigan sentencing guidelines, and certain fact-finding at his sentencing. The Michigan Court of Appeals affirmed Jordan's conviction and sentence in an unpublished, *per curiam* opinion. *See Jordan*, 2015 WL 3766797.

Jordan raised the same three claims in the Michigan Supreme Court, which reversed in part the judgment of the Michigan Court of Appeals rather than granting leave to appeal. The Michigan Supreme Court remanded the case to the Wayne County Circuit Court for a determination of whether it would have imposed a materially different sentence under the sentencing procedure described in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). The State Supreme Court denied leave to appeal in all other respects because it was not persuaded to review the remaining issues. *See People v. Jordan*, 875 N.W.2d 199 (Mich. 2016).

On March 6, 2017, while Jordan's criminal case was pending on remand in the Wayne County Circuit Court, Jordan filed his initial habeas corpus petition. ECF No. 1. Simultaneously, he filed a motion to hold his petition in abeyance because the Wayne County Circuit Court had not yet issued a final decision on remand from the Michigan Supreme Court. On May 16, 2017, the Court granted Jordan's motion for a stay and closed the case for administrative purposes. ECF No. 6.

On June 6, 2018, the state trial court reaffirmed its initial sentence in Jordan's case. *See People v. Jordan*, No. 13-008896-01-FC (Wayne Cty. Cir. Ct. June 6, 2018). Jordan did not appeal the trial court's decision. Instead, on August 6, 2018, he filed an amended petition for the writ of habeas corpus, ECF No. 8, and a motion to lift the Court's stay and re-open his case. ECF No. 7.

On February 4, 2019, the Court granted Jordan's motion and re-opened this case. ECF No. 10. The State subsequently filed an answer in opposition to the amended petition. ECF No. 12.

**II.**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L.Ed. 2d 279 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Thus, "[o]nly an 'objectively unreasonable' mistake, [*White v.*

*Woodall*, 572 U.S. 415, 419 (2014)], one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir. 2019) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, __S. Ct.__, No. 19-419, 2019 WL 5301304 (U.S. Oct. 21, 2019). A state-court's factual determinations, moreover, are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). Review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.

### A.

Jordan alleges that he was denied his constitutional right to due process of law because he was convicted on legally insufficient evidence. According to Jordan, Holt never testified that Jordan used or fashioned an object to lead her to believe he was armed. Nor did Holt testify that she was put in fear by such an object. Although Hays saw Jordan with a gun after Jordan snatched Holt's necklace, Jordan asserts that Hays' testimony was insufficient to elevate a larceny from a person to an armed robbery. Jordan contends that there was no evidence that he used a weapon to perpetuate a larceny. The Michigan Court of Appeals adjudicated this claim on the merits and rejected it.

The critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> [W]hether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar

> standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).

Under AEDPA, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). This is because §2254 claims challenging the sufficiency of evidence are "subject to two layers of judicial deference," *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Johnson*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Smith*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court"), *cert. denied*, 138 S. Ct. 1283 (2018).

The inquiry "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. To establish armed robbery in Michigan, the prosecutor must prove that:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and
>
> (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any

person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

*People v. Chambers*, 742 N.W.2d 610, 614 (Mich. Ct. App. 2007) (footnote omitted).

A defendant is guilty of larceny from another person if the defendant steals something from the person of another. *People v. Smith-Anthony*, 837 N.W.2d 415, 419 (Mich. 2013) (citing Mich. Comp. Laws § 750.357). The phrase "in the course of committing a larceny" in the robbery statute "includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." Mich. Comp. Laws § 750.530.

Jordan does not dispute that he took Holt's necklace by force. The only issue is whether, while commiting a larceny, Jordan possessed a dangerous weapon or used or fashioned an article in a manner to lead Holt to reasonably believe that the article was a dangerous weapon.

A video of the incident at the gas station showed Jordan lunge toward the victim, reach for something, and then run away. *See* ECF No. 13-6 at PageID.339, 349-351. The video did not depict Jordan with a handgun or making a movement toward his waistband or some other place where he could have been carrying a weapon. *Id*. at PageID.349, 352. Holt, however, testified that she noticed something in Jordan's hand when he approached her and that she thought it may have been a gun or a weapon. *Id*. at PageID.351.

Hays, moreover, informed the police shortly after the incident that he saw a gun in Jordan's waistband when he pursued Jordan. *Id*. at PageID.382-84, 394. At trial, Hays initially testified that he did not know whether the gun was real. Ultimately, however, he admitted that he saw a .38 caliber gun in Petitioner's waistband when Jordan lifted his shirt and was attempting to drive away. *See id*. at PageID.374, 378-379, 393-394.

The jury could have inferred from Holt's testimony that Jordan was armed with a dangerous weapon when he stole Holt's necklace. The jury also could have inferred from Hays's testimony that Jordan was armed "in the course of committing a larceny," that is, during his flight from the crime scene. When taken in the light most favorable to the prosecution, the evidence was sufficient to support Jordan's conviction for armed robbery, and the state appellate court's rejection of Jordan's claim was objectively reasonable. Jordan is not entitled to relief on his claim.

**B.**

Jordan alleges next that the state trial court sentenced him on inaccurate information and incorrectly scored ten points for offense variable four of the state sentencing guidelines. Offense variable four "is psychological injury to a victim." Mich. Comp. Laws § 777.34(1). A score of ten points is appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim." Mich. Comp. Laws § 777.34(1)(a). "In making this determination, the fact that treatment has not been sought is not conclusive." Mich. Comp. Laws Ann. § 777.34(2).

A score of zero is proper if "[n]o serious psychological injury requiring professional treatment occurred to a victim." Mich. Comp. Laws § 777.34(1)(3). Jordan contends that, other than the prosecutor's hearsay comments at his sentencing, there was no evidence that the complainant suffered any serious psychological injury and, therefore, the trial court erred by scoring ten points for offense variable four.

The contention that the trial court incorrectly scored the state sentencing guidelines is not a cognizable claim in this case because a state court's application and interpretation of state sentencing guidelines is "a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law," *Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990). Thus, the only question is whether the trial court violated Petitioner's constitutional right to due process when scoring offense variable four.

A sentence violates due process of law if the trial court relied on extensively and materially false information that the defendant had no opportunity to correct through counsel. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To obtain relief, Petitioner must show that his sentence was "founded at least in part upon misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447 (1972).

Offense variable four initially was scored at zero for no serious psychological injury to the victim, but the prosecutor asked the trial court to increase the score to ten points for serious psychological injury to Holt. Holt did not attend Jordan's sentencing, and she did not provide a victim impact statement, but as the Michigan Court of Appeals explained,

> [d]uring the trial, Holt testified that she was "upset" and "surprised" when defendant stole her necklace, and "start[ed] cussing him out." In describing the robbery, she omitted mention of feeling afraid or frightened. She confessed to being "a little worried" after receiving defendant's telephone call from the jail. She was concerned that defendant had learned her name, somehow found her cell phone number, and may have other personal information.

*Jordan*, 2015 WL 3766797, at *2. Additionally, the trial court noticed some nervousness in Holt's demeanor at trial and encouraged her not to be nervous. *See* 1/22/14 Trial Tr. at 155, ECF No. 13-6, PageID. 359.

At Jordan's sentencing, the prosecutor argued in favor of scoring ten points for offense variable four, stating:

> I've spoken with the victim in this matter…She didn't even want to come today. She was very frightened at the trial. If you remember, she was contacted by the defendant the night before. She indicates to me that this happened in broad daylight. She feels that she cannot go anywhere anymore. She doesn't feel like she is safe when she goes shopping. She doesn't feel safe in her own home. She (sic) most certainly had a psychological impact on her. So much so, she didn't even want to appear today.

2/6/14 Sentence Tr. at 7, ECF No. 13-9, PageID. 496. Jordan's attorney admitted that the crime was an "unsettling incident [for] the victim." *Id*.

The trial court decided to score offense variable four at ten points because "[Holt] indicated that she was frightened by what occurred, and that she[] had serious emotional concerns since that time." *Id*. at 8, PageID. 497. Later in the proceeding, the trial court stated that "the victim [was] still traumatized from this and [was] afraid to even come in here today…" *Id*. at 13, PageID. 502. The court opined that this "sp[oke] volumes about the situation." *Id*.

The record indicates that the trial court did not rely on extensively and materially false information or on misinformation of constitutional magnitude when scoring offense variable four. Furthermore, hearsay evidence may be admitted at a sentencing if it is relevant to a critical issue in the punishment phase and substantial reasons exist to assume its reliability. *Green v. Georgia*, 442 U.S. 95, 97 (1979). Jordan is not entitled to the writ of habeas corpus on the basis that the trial court scored ten points for offense variable four.

## C.

Jordan's third and final claim alleges that the trial court violated his Sixth Amendment rights through judicial fact-finding at his sentencing. Specifically, Jordan contends that, when scoring offense variable four, the court relied on facts that were not proved beyond a reasonable doubt and increased the floor of the permissible sentence.

## 1.

The Sixth Amendment "[b]y operation of the Fourteenth Amendment . . . is applicable to the States." *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 861 (2017) (citing *Duncan v. Louisiana*, 391 U.S. 145, 149–150 (1968)). The Sixth Circuit Court of Appeals, moreover, recently explained that, "[b]y operation of the Sixth Amendment, '[i]t is unconstitutional for a legislature to remove

from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'" *Robinson v. Woods*, 901 F.3d 710, 715 (6th Cir. 2018) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)), *cert. denied*, 139 S. Ct. 1264 (2019). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

The Supreme Court applied *Apprendi* to state sentencing guidelines in *Blakely v. Washington*, 542 U.S. 296, 303 (2004), and explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *United States v. West*, 392 F.3d 450, 459–60 (D.C. Cir. 2004) (quoting *Blakely*, 542 U.S. at 303).

In *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court further expanded on *Apprendi* and stated:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 483 n. 10, 490. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

*Id.* at 103.

After the Supreme Court issued its decision in *Alleyne*, the Michigan Supreme Court concluded in *Lockridge*, 870 N.W.2d at 519, "that Michigan's sentencing guidelines violate the Sixth Amendment rule from *Apprendi*, as extended by *Alleyne*." To remedy the constitutional flaw in the guidelines, the Michigan Supreme Court held that Michigan's sentencing guidelines are now only advisory. *Id*. at 524. "*Lockridge* did not change how the guidelines ranges for minimum sentences were computed; the only change was that they were no longer binding on the

-11-

sentencing judge." *Reign v. Gidley*, 929 F.3d 777, 779 (6th Cir. 2019). The "[f]ailure to submit a sentencing factor to the jury, [moreover], is not structural error." *Washington v. Recuenco*, 548 U.S. 212, 222 (2006).

## 2.

The Michigan Court of Appeals upheld Jordan's sentence on direct appeal without addressing Jordan's Sixth Amendment claim. The Michigan Supreme Court subsequently remanded Jordan's case to the state trial court for a determination of whether the trial court would have imposed a materially different sentence under the sentencing procedure described in *Lockridge*. The Supreme Court ordered the trial court to follow the procedure described in Part VI of its opinion in *Lockridge* and then stated:

> If the trial court determines that it would have imposed the same sentence absent the unconstitutional constraint on its discretion, it may reaffirm the original sentence. If, however, the trial court determines that it would not have imposed the same sentence absent the unconstitutional constraint on its discretion, it shall resentence the defendant.

*Jordan*, 875 N.W.2d at 200.

On remand, when the sentencing guidelines were advisory only, the trial court took note of Jordan's prior criminal record, the fact that he had traumatized the victim by his actions, and the statutory maximum penalty of life imprisonment for armed robbery. The court concluded from the circumstances that existed at the time of Jordan's original sentencing that the original sentence was fair, appropriate, and just. The court then stated that it would have imposed the very same sentence, absent any unconstitutional constraint on its discretion. Accordingly, the court reaffirmed Jordan's sentence.

The use of advisory guidelines that recommend, rather than require, the selection of particular sentences in response to differing sets of facts do not implicate the Sixth Amendment.

*United States v. Booker*, 543 U.S. 220, 233 (2005). Therefore, the state trial court did not violate *Alleyne* on remand when the state sentencing guidelines were no longer mandatory, and any alleged judicial fact-finding at the original sentencing would be harmless. As such, Jordan is not entitled to relief on his claim. *See Orrick v. Macauley*, No. 19-1240, 2019 WL 2454856, at *3 (6th Cir. May 8, 2019) (affirming the district court's finding that the petitioner's claim under *Alleyne* was harmless, because the state trial court said that it would have imposed the same sentence whether the guidelines were mandatory or advisory).

**IV.**

The state courts' adjudications of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts. Their decisions were not so lacking in justification that there was an error beyond any possibility for fair-minded disagreement.

Accordingly, it is **ORDERED** that the amended petition for writ of habeas corpus (ECF No. 8) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

It is further **ORDERED** that permission to appeal *in forma pauperis* on appeal is **DENIED** because an appeal from the Court's decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

Dated: December 16, 2019   s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Joseph Jordan** #862127, ALGER MAXIMUM CORRECTIONAL FACILITY, N6141 INDUSTRIAL PARK DRIVE, MUNISING, MI 49862 by first class U.S. mail on December 16, 2019.

s/Kelly Winslow
KELLY WINSLOW, Case Manager